UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SEAN MICHAEL KOVALEVICH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BUREAU OF INDIAN AFFAIRS, *et al.*, ) <br> ) <br> Defendants. ) <br> ) | No. 18-cv-0610 (KBJ) |

## MEMORANDUM OPINION

On March 9, 2018, *pro se* Plaintiff Sean Michael Kovalevich filed the instant lawsuit to obtain records from the Bureau of Indian Affairs ("the Bureau") in response to a document request that he had submitted under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  (*See* Compl., ECF No. 1, ¶¶ 18, 28.)  During the course of the ensuing litigation, the Bureau released 83 responsive documents to Kovalevich, either in full or in part, while justifying its withholdings on the basis of FOIA Exemptions 6 and 7(C).  (*See* Pl.'s Statement of Material Facts to Which There Is No Genuine Issue ("Pl.'s Statement of Undisputed Material Facts"), ECF No. 18, ¶¶ 10–12; Defs.' Statement of Material Facts to Which There Is No Genuine Issue ("Defs.' Statement of Undisputed Material Facts"), ECF No. 16-1, ¶¶ 3–4.)  The Bureau now insists that it has fully complied with its obligations under the FOIA, because it conducted an adequate search for responsive records, properly redacted or withheld personal information concerning third parties, and disclosed all non-exempt portions of responsive documents.  (*See* Defs.' Opp'n to Pl.'s

Mot. for Summ. J. & Cross-Mot. for Summ. J. ("Defs.' Cross-Mot."), ECF No. 16, at 4–9.)[1] Kovalevich concedes that the Bureau has complied with its search and disclosure obligations, but maintains that the agency has violated the FOIA nevertheless, by attempting to assess search fees after failing to respond to his request in a timely manner, and also by engaging in a practice of ignoring FOIA requests and disregarding the statute's response deadlines. (*See* Pl.'s Opp'n to Defs.' Cross-Mot. for Summ. J. & Reply in Supp. of Pl.'s Mot. ("Pl.'s Combined Reply"), ECF No. 18, at 4–5.) Kovalevich further argues that he is entitled to attorney's fees and costs, because his lawsuit caused the Bureau to release the requested records. (*See id.* at 6.)

Before this Court at present are Kovalevich's Motion for Summary Judgment and the Bureau's Cross-Motion for Summary Judgment. (*See* Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 12; Defs.' Cross-Mot.)  For the reasons explained fully below, the Court has concluded that the Bureau has fully (and concededly) discharged its duties under the FOIA and that Kovalevich has failed to demonstrate his entitlement to any of his requests for relief. Therefore, the Bureau's motion must be **GRANTED**, and Kovalevich's motion must be **DENIED**. A separate Order consistent with this Memorandum Opinion will follow.

I.  BACKGROUND

  A.  Administrative Proceedings

Kovalevich is a North Dakota state prisoner who is incarcerated in Bismarck, North Dakota. (*See* Compl. ¶ 2.) On December 12, 2016, Kovalevich sent a letter to

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

2

the Turtle Mountain Law Enforcement Agency's Office of Justice Services requesting "all documents and records maintained by the Bureau of Indian Affairs, Belcourt Police Department concerning [him]."  (Defs.' Statement of Undisputed Material Facts ¶ 2; Decl. of Sean Kovalevich ("Kovalevich Decl."), ECF No. 12, ¶ 1; Ex. 1 to Compl., ECF No. 1-2, at 1.)  In his letter, Kovalevich explained that he was "willing to pay reasonable search and duplication fees[,]" but asked the agency to notify him "ahead of time" if the estimated fees exceeded $10.00.  (Ex. 1 to Compl. at 1.)  After 20 workdays passed without receiving any response, Kovalevich sent another letter to the Bureau on January 29, 2017, reiterating his request for records pertaining to him.  (*See* Defs.' Statement of Undisputed Material Facts ¶ 2; Kovalevich Decl. ¶ 2.)

The Bureau responded to Kovalevich's letters on February 27, 2017, acknowledging that it had received his request.  (*See* Ex. 2 to Compl., ECF No. 1-2, at 3.)  The Bureau further informed Kovalevich (1) that processing his request would likely take seven hours and the estimated cost of search and review fees was $215; (2) that there would be no charge for duplication of records, because his request involved 85 pages and duplication of the first 100 pages is free; and (3) that the Bureau would not begin processing Kovalevich's FOIA request until he provided "written assurance" of his "willingness to pay [the] associated fees[.]"  (*Id*. at 3–4.)  The Bureau additionally warned Kovalevich that if he did not reply within "20 workdays on the fee issue," the Bureau would "assume that [he was] no longer interested in this matter and [would] close the file on [his] request."  (*Id*. at 4.)

In a letter dated March 2, 2017, Kovalevich notified the Bureau of his intent to appeal the fee estimate (*see* Kovalevich Decl. ¶ 4; Answer & Defenses, ECF No. 11,

3

¶ 11; Ex. 4 to Compl., ECF No. 1-2, at 9), and he submitted a FOIA appeal letter to the Department of the Interior's Office of the Solicitor a few days later (*see* Kovalevich Decl. ¶ 5; Answer & Defenses ¶ 12; Ex. 3 to Compl., ECF No. 1-2, at 5–8). In his appeal letter, Kovalevich asserted that the cost estimate was "excessive[,]" and that there was "no reason that 7 hours would be required to search and review 85 pages" of records. (Ex. 3 to Compl. at 5–6.) The Bureau responded to Kovalevich's March 2, 2017 letter on May 25, 2017, informing him that, although its search for responsive records had begun, the Bureau had decided to close his file because he had "not agreed to pay" the estimated fee. (Ex. 4 to Compl. at 9–10.)

Kovalevich's criminal defense attorney then contacted the Bureau about the fee issue (Kovalevich Decl. ¶ 7; Answer & Defenses ¶ 14), offering to pay the estimated fees on Kovalevich's behalf (Ex. 7 to Compl., ECF No. 1-2, at 18). However, according to Kovalevich, the Bureau rejected his lawyer's offer and insisted that Kovalevich needed to "personally file" a new request since his prior request had been closed. (*See id.*) Kovalevich renewed his request on August 18, 2017, and he sent a follow-up letter on September 26, 2017. (*See* Exs. 5 & 6 to Compl., ECF No. 1-2, at 12–14.) After 75 business days passed without receiving any response to his renewed request, Kovalevich submitted another "FOIA appeal" letter to the Office of the Solicitor, stating that he was "appealing the non-response of BIA Belcourt PD which is a denial of [his] request[,]" and that he was additionally "renewing [his] appeal of the agency's fee determination as being excessive and unjustifiable." (Ex. 7 to Compl. at 19.) Kovalevich did not receive a response to his appeal letter. (Kovalevich Decl. ¶ 11.)

4

## B.     The Court Proceedings And Subsequent Disclosures

Kovalevich filed the instant legal action against the Bureau on March 9, 2018 (*see* Compl. at 1), and moved for summary judgment on August 3, 2018 (*see* Pl.'s Mot. at 1).[2]  In his motion, Kovalevich argues that the "uncontested facts" demonstrate that the Bureau missed the statutory deadline to respond to his FOIA request, and that "the [Bureau] quoted [him] a fee . . . totaling $215.00"—even though "an agency may not assess search fees if it failed to comply with the [FOIA's] time limit[.]"  (*Id.* at 2.)  Kovalevich's summary judgment motion further contends that, "to the extent that [the Bureau] now allege[s] that any or all of the requested documents are exempt from release[,]" the Court should conduct an *in camera* review of the withheld records; "require indexing, justification, and itemization" of the records pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); and order the agency to release all non-exempt records without charge.  (Pl.'s Mot. at 3–4.)  Kovalevich's motion also asks the Court to enjoin the Bureau "from relying on the invalid practices of ignoring FOIA requests and appeals and of claiming that the . . . twenty workday time limit does not apply until they respond to the request" (*id.* at 4), and to award him reasonable attorney's fees and costs (*id.*).  The motion additionally requests that the Court "declare the [Bureau's] actions to be in violation of the FOIA" (*id.*); "make a specific finding of fact" that the agency's "actions were so flagrant as to be arbitrary and capricious" (*id.*); and "refer the matter to Special Counsel for investigation" (*id.*).

---

[2] Kovalevich's complaint also names as defendants the Bureau's parent agency (the Department of the Interior), and two of the individual officers who were involved in handling his FOIA request.  (*See* Compl. at 1.)  This Court previously dismissed the individual officers as improper defendants.  (*See* Order, ECF No. 5, at 1–2.)

5

After Kovalevich filed his motion for summary judgment, the Bureau filed a Status Report on August 20, 2018, stating that it had completed the search of its records in response to Kovalevich's request and had found "85 potentially responsive documents consisting of approximately 260 pages." (Status Report, ECF No. 13, ¶ 2.) The Status Report also expressed the Bureau's intention to "process th[e] records and produce any responsive non-exempt documents to [Kovalevich] no later than September 20, 2018." (*Id.* ¶ 3.) The Bureau ultimately produced 83 responsive documents to Kovalevich on October 2, 2018 (Status Report, ECF No. 14, ¶ 2), and then filed a cross-motion for summary judgment on November 5, 2018 (*see* Defs.' Cross-Mot. at 1).

In its cross-motion, the Bureau argues that it has discharged its duties under the FOIA, because it has conducted an adequate search of its records and has produced all non-exempt documents. (*See id.* at 4.) The Bureau has also attached to its motion the declaration of Renee Parisien—the Law Enforcement Assistant who processed Kovalevich's request (*see* Decl. of Renee Parisien ("Parisien Decl."), ECF No. 16-2, ¶¶ 1, 4)—as well as a *Vaughn* index that describes the 260 pages of responsive records and sets forth Parisien's reasons for redacting or withholding records pursuant to Exemptions 6 and 7(C) of the FOIA (*see Vaughn* Index, Ex. 1 to Parisien Decl., ECF No. 16-3, at 1–8).

Notably, in his combined opposition and reply brief, which was filed on December 13, 2018, Kovalevich asserts that he is "satisfied" with the Bureau's document production, and that he "does not dispute any exemptions claimed in [the Bureau's *Vaughn* Index]." (Pl.'s Combined Reply at 4.) As a result, Kovalevich has withdrawn his request for a court order enjoining the Bureau from withholding

6

documents. (*See id.*) However, Kovalevich persists in requesting that the Court "order that no fees may be assessed" (*id.*), while acknowledging that the Bureau has "not assessed any fees for the production of [the] records" at issue and that "[n]o search fees have yet been requested" (*id.*). Kovalevich further reaffirms his remaining requests for relief, including his requests that the Court enjoin the Bureau from "relying on . . . invalid practices" concerning its processing and production of records in response to FOIA requests (*id.* at 5), and that the Court award him reasonable attorney's fees and costs (*id.* at 6).

## II. DISCUSSION

As explained above, the Bureau has now produced 83 records responsive to Kovalevich's FOIA request, and Kovalevich does not dispute the adequacy of the Bureau's search or its decision to withhold and redact certain documents pursuant to FOIA Exemptions 6 and 7(C). (*See* Pl.'s Combined Reply at 3–4; *see also* Defs.' Statement of Undisputed Material Facts ¶¶ 3–4.) Nor does Kovalevich contest the facts set forth in Parisien's declaration (*see* Pl.'s Statement of Undisputed Material Facts ¶¶ 8, 12), which pertain to her search and review of the records responsive to Kovalevich's request (*see* Parisien Decl. ¶¶ 2–6). Accordingly, the Court accepts as true the unrebutted facts contained in Parisien's declaration, *see Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996); the Court has analyzed those facts to assess whether either party is entitled to summary judgment.

For the reasons discussed below, the Court has determined that the Bureau is entitled to summary judgment, because it has conducted a reasonable search for responsive records, has properly withheld information that is protected by FOIA

Exemption 7(C), and has released all reasonably segregable information. The Court further concludes that it lacks jurisdiction to issue an order concerning the Bureau's ability to assess search fees, and that Kovalevich has not demonstrated his entitlement to any of his other requests for relief.

> **A.     The Bureau Is Entitled To Summary Judgment**
>
> > **1.     <u>The Bureau Conducted An Adequate Search For Records</u>**

"[T]he touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA request is reasonableness, and in particular, whether the agency made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Muckrock, LLC v. CIA*, 300 F. Supp. 3d 108, 125 (D.D.C. 2018) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see also Physicians for Hum. Rts. v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) (noting that, "as long as [the reasonableness] standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight"). Kovalevich does not contest the adequacy of the search that the Bureau ultimately conducted in response to his FOIA request, and based upon the uncontested first-hand account in Parisien's declaration, the Court is satisfied that the Bureau's search was reasonably calculated to locate all responsive records.

In particular, in her declaration, Parisien identifies the categories of records that the Turtle Mountain Law Enforcement Agency maintained, which range from law enforcement case files and call logs to payroll records and personnel files. (Parisien Decl. ¶ 2.) Parisien then describes the categories of records that she searched—including case files, call logs, FOIA requests, and record disposition files—and she

8

explains that the remaining categories "were not searched because those files were not reasonably expected to contain the records requested." (*Id.* ¶ 4.) Parisien also avers that she "spent approximately 7 hours searching through several databases, including IMARS for police reports, Criminal Investigation Division files, and the records storage room[,]" and located a total of 260 pages of responsive documents. (*Id.* ¶¶ 4–5.)

In this Court's view, Parisien's declaration provides sufficient detail to conclude that the search was reasonable and conducted in good faith; thus, the Court finds that the Bureau is entitled to summary judgment with respect to the adequacy of its search for responsive records. *See, e.g.*, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." (internal quotation marks and citation omitted)).

### 2. The Bureau's Withholdings Were Proper

According to Parisien, after locating the universe of responsive records, she then redacted "[c]ertain personal identifying information [concerning] the victim, witnesses, or criminal investigators" prior to the production, pursuant to FOIA Exemptions 6 and 7(C). (Parisien Decl. ¶¶ 5–6.) Under Exemption 6 of the FOIA, an agency may withhold "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6); *see also N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (explaining that "the threshold for application of Exemption 6 is crossed if the information merely applies to a particular individual" (internal quotation marks and citation omitted)). Meanwhile, Exemption 7(C) permits the withholding of "records or information compiled for law enforcement purposes . . . to the extent that

9

the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(7)(C).  Thus, both exemptions protect personal privacy interests, but Exemption 7(C) is "somewhat broader" than Exemption 6, as the latter authorizes only the withholding of information that would constitute a "*clearly* unwarranted invasion of personal privacy."  *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (emphasis added) (internal quotation marks and citation omitted).  Consequently, when the information that an agency withholds was "'compiled for law enforcement purposes,' [thereby] implicating Exemption 7(C)," a court need not "consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)."  *Id.*

In the instant case, Parisien avers (and Kovalevich does not dispute) that all of the responsive documents "were part of criminal investigation case files concerning" Kovalevich, and that they were "compiled for law enforcement purposes, pursuant to the Indian Law Enforcement Reform Act . . . and Indian Country Law Enforcement regulations contained in 25 C.F.R. part 12." (Parisien Decl. ¶ 5.)  Therefore, the Court will address the withholdings only in the context of what Exemption 7(C) permits.  That evaluation requires the Court to "balance the public interest in disclosure against the privacy interest the exemption is intended to protect."  *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009).  And with respect to the personal privacy interests of individuals referenced in law enforcement documents, the D.C. Circuit has "long recognized" that the "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation."  *Roth*, 642 F.3d at 1174

(internal quotation marks and citations omitted). For that reason, it is well established that the "targets of law-enforcement investigations" as well as the "witnesses, informants, and . . . investigating agents have a substantial interest in ensuring that their relationship to the investigations remains secret." *Id*. (internal quotation marks and citations omitted); *accord Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (citing "a long line of FOIA cases holding that disclosure of the *identities* of private citizens mentioned in law enforcement files constitutes an unwarranted invasion of privacy and is thus exempt under 7(C)").

Here, Parisien's declaration states that "[c]ertain personal identifying information that may invade the privacy interest of the victim, witnesses, or criminal investigators [involved in Kovalevich's case], was withheld" (Parisien Decl. ¶ 6), and the accompanying *Vaughn* index confirms that various documents responsive to Kovalevich's request contained individuals' names, photos, and phone numbers (*see Vaughn* Index at 1–5). Consistent with the precedents of this jurisdiction, this Court agrees with the Bureau that releasing such personal identifying information could "reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), and Kovalevich has not identified any public interest in disclosure of this information, let alone challenged the Bureau's redactions (*see* Pl.'s Combined Reply at 4). Accordingly, the Court finds that the Bureau properly withheld third-party information under FOIA Exemption 7(C).

    3.    <u>The Bureau's Production Satisfied The FOIA's Segregability Requirement</u>

The FOIA mandates that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc.*

11

*v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also* 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" and "[i]f the requester successfully rebuts this presumption, the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). With respect to the instant production, the Bureau has withheld in full only two pages—consisting of photos and an agent's investigative notes—on the ground that they contain personal information protected under FOIA Exemptions 6 and 7(C). (*See Vaughn* Index at 1, 3.) The Bureau then released the remaining responsive records to Kovalevich either in part or in full, and the *Vaughn* Index specifies the documents that were redacted to protect personal information of third parties. (*See id.* at 1–8; *see also* Defs.' Statement of Undisputed Material Facts ¶¶ 3–4; Pl.'s Statement of Undisputed Material Facts ¶¶ 10–12.)

In light of the agency's *Vaughn* Index, and the fact that Kovalevich has not made any effort to rebut the presumption of compliance afforded to the agency's segregation of materials, this Court finds that the Bureau has satisfied its duty to release all reasonably segregable, non-exempt information. As a result, the Court concludes that the Bureau is entitled to summary judgment with respect to Kovalevich's basic FOIA claims.

### B. Kovalevich Is Not Entitled To Summary Judgment With Respect To His Residual Requests

Kovalevich concedes that he is satisfied with the Bureau's production of records and does not contest any of the Bureau's redactions or withholdings, but he still challenges the Bureau's response to his FOIA request in two respects, which the Court

construes as legal claims with respect to which Kovalevich has requested summary judgment.  First, Kovalevich maintains that the Bureau missed the statutory deadlines to respond to his FOIA request and his administrative appeals, and, as a result, Kovalevich asks the Court to enter an order forbidding the Bureau from assessing any search fees in connection with his request.  (*See* Pl.'s Combined Reply at 4.)  Second, Kovalevich asserts that the Bureau has engaged in "invalid practices of ignoring FOIA requests and appeals and of claiming that [the FOIA's response deadline] does not apply until [it] respond[s] to the request."  (*Id.* at 5.)[3]  In order to obtain summary judgment on either of these claims, Kovalevich must demonstrate that "the pleadings, materials on file, and affidavits 'show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.'" *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017) (quoting Fed. R. Civ. P. 56(a)).  Under this standard, "[a] fact is 'material' if it is capable of affecting the substantive outcome of the litigation[,]" and a "dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 85–86 (D.D.C. 2018).  Additionally, although Kovalevich is proceeding *pro se* in this matter, and thus the Court must construe his pleadings "liberally[,]" *Erickson v.*

---

[3] In his complaint, Kovalevich appears to assert these claims under both the FOIA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* (*See* Compl. ¶¶ 22–27.)  Kovalevich has not pursued his APA claim in any of his briefing, however, and the Court does not have jurisdiction to review his claims under the APA in any event.  The APA "only authorizes judicial review when the agency action is final and there is no adequate remedy[,]" and, in this case, the FOIA provides an adequate remedy for each of Kovalevich's claims. *Inst. for Pol'y Stud. v. CIA*, 885 F. Supp. 2d 120, 153–54 (D.D.C. 2012) (holding that plaintiff's claim under the APA regarding the agency's alleged violation of the FOIA was unreviewable, because the FOIA provided an adequate remedy for plaintiff's claim); *see also Nat'l Sec. Couns. v. CIA*, 898 F. Supp. 2d 233, 264–66 (D.D.C. 2012) (holding that the court lacked subject matter jurisdiction to review plaintiff's claims under the APA regarding the agency's alleged policies or practices "in connection with the processing of the plaintiff's FOIA requests[,]" because the FOIA offered an adequate remedy for such claims (internal quotation marks and citation omitted)).  This Court will therefore evaluate Kovalevich's claims only under the FOIA.

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted), Kovalevich must still abide by the Federal Rules of Civil Procedure, *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009), which means he must identify record evidence that establishes each element of his claims for relief, *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).

Applying these standards here, the Court concludes that summary judgment is not warranted on either of Kovalevich's claims.

        1.        <u>The Bureau Has Produced The Requested Records Without Assessing Search Fees; Therefore, This Court Lacks Jurisdiction To Issue An Order Concerning Any Such Assessment</u>

Starting with Kovalevich's claim regarding the agency's assessment of search fees, it is well established that federal courts lack the power to "decide questions that cannot affect the rights of litigants in the case before them." *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90–91 (D.C. Cir. 1986) (internal quotation marks and citation omitted). Thus, when "an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the [claim] can no longer proceed and must be [denied] as moot." *Cause of Action Inst. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 66, 77 (D.D.C. 2017) (internal quotation marks and citation omitted).

So it is here. At the time Kovalevich filed the instant lawsuit, the Bureau had not yet produced any responsive records, but it had expressed an intent to assess search fees for Kovalevich's request. (*See* Ex. 2 to Compl. at 3–4; Compl. ¶¶ 9, 18.) Then, during the pendency of the litigation, the Bureau released the responsive documents to Kovalevich—*and it did so free of charge*. (*See* Pl.'s Combined Reply at 4.) Kovalevich's challenges to the Bureau's previously stated intent to assess fees became

moot once the agency produced the responsive records "without seeking payment from him[.]" *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (holding that a plaintiff's challenge to a denial of a fee waiver became moot when the agency released the responsive documents "without seeking payment"). And because the "rule against deciding moot cases forbids federal courts from rendering advisory opinions[,]" *id.*, this Court has no basis to even consider whether the Bureau's initial determination regarding search fees was unlawful, *see Schoenman v. FBI*, 573 F. Supp. 2d 119, 136 (D.D.C. 2008).

To the extent that Kovalevich seeks an order declaring that the Bureau is not permitted to charge him any search fees *in the future*, the Court also lacks jurisdiction to proceed, on the ground that Kovalevich does not have standing to pursue that request. In order to invoke this Court's jurisdiction to obtain such an order, Kovalevich must demonstrate, *inter alia*, that he will suffer the "invasion of a legally protected interest which is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Kovalevich has not provided this Court with any reason to believe that the Bureau will assess search fees in connection with the FOIA request that it has already processed (indeed, the agency has apparently made no attempt to charge Kovalevich since it produced the responsive records in October of 2018) and, therefore, Kovalevich has failed to establish any concrete, imminent injury that would give him standing to pursue his requested relief. *See, e.g., Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[W]e have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations

of *possible* future injury are not sufficient." (internal quotation marks and citation omitted)).

Consequently, the Court must deny Kovalevich's summary judgment motion with respect to his claim concerning the alleged assessment of search fees.

### 2. Kovalevich Has Not Demonstrated That The Agency Has A Policy Or Practice Of Ignoring FOIA Requests And Disregarding The Statute's Response Deadlines

The Court also finds that Kovalevich is not entitled to summary judgment regarding his claim that the Bureau has a policy or practice of violating the FOIA. In this jurisdiction, FOIA requesters may "bring, in conjunction with [a] specific information request, 'a claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (emphasis omitted) (quoting *Newport Aeronautical Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012)). Any such "policy or practice" claim can be based upon "informal agency conduct resulting in long delays in making requested non-exempt records available[.]" *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 777–78 (D.C. Cir. 2018). And to succeed on such a claim, a plaintiff must demonstrate, at the very least, that the agency's delay is due to a policy or practice, and *not* "isolated mistakes by agency officials[.]" *Am. Ctr. for L. & Just. v. FBI*, 470 F. Supp. 3d 1, 6 (D.D.C. 2020) (internal quotation marks and citation omitted).

Here, Kovalevich asserts that the "undisputed facts show that [the Bureau] did not produce the requested records until October 2018, nearly two years after [his] original FOIA request, and only after a Complaint was filed . . . in this Court." (Pl.'s Combined Reply at 5.) Kovalevich further emphasizes that the Department of the

16

Interior has not responded to his appeals, despite having received his appeal letters. (*Id.*) These facts may well demonstrate the agency's failure to respond to Kovalevich in a timely manner, but the Court concludes that they do not—on their own—establish an underlying policy or practice "to delay requests." *Am. Ctr. for L. & Just.*, 289 F. Supp. 3d at 87 (internal quotation marks and citation omitted); *see also id.* (noting that "[d]elay alone, even repeated delay, is not the type of illegal policy or practice that is actionable" under the FOIA (internal quotation marks and citation omitted)).

In the absence of any evidence indicating that the Bureau has adopted a formal or informal *policy* of delaying responses to FOIA requests, the Court lacks any factual basis to enter summary judgment in Kovalevich's favor. Therefore, the Court denies Kovalevich's motion for summary judgment with respect to this claim as well.

### 3. Kovalevich's Other Requests For Relief Cannot Be Granted For Various Reasons

Kovalevich's summary judgment motion also argues that the Court should "explicitly declare the Agency's actions to be in violation of the FOIA[,]" and that the Bureau's "arbitrary and capricious" actions merit referral to the Special Counsel for investigation. (Pl.'s Mot. at 4; Pl.'s Combined Reply at 5.) Given the cursory nature of these arguments, the Court has not construed them as legal claims. But even if it had, the Court finds that Kovalevich has not come close to demonstrating his entitlement to either of these requests for relief for three reasons.

First, to the extent that Kovalevich is seeking a declaratory judgment regarding the Bureau's intended assessment of fees or its failure to timely disclose responsive records, those issues are now moot given that the agency has released records without charging Kovalevich any fees. *See Hall*, 437 F.3d at 99; *see also Bayala v. U.S. Dep't*

of *Homeland Sec.*, 827 F.3d 31, 35 (D.C. Cir. 2016). Kovalevich's argument that the Bureau acted in an arbitrary and capricious manner—specifically, when it "attempted to assign search fees" and "ignored" Kovalevich's FOIA request and appeals (Pl.'s Combined Reply at 5)—is also moot in light of the agency's release of records at no cost. *See, e.g.*, *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982) ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

Second, if Kovalevich is seeking a declaratory judgment in connection with his claim that the Bureau has engaged in an "invalid practice[]" (Pl.'s Combined Reply at 5), that claim fails for the reasons explained in Part II.B.2, *supra*. In short, Kovalevich has not provided any evidence that the Bureau has a *policy or practice* of ignoring FOIA requests and disregarding the statute's response deadlines. *See Am. Ctr. for L. & Just.*, 289 F. Supp. 3d at 87.

Third, and finally, with respect to Kovalevich's request for a Special Counsel investigation, it is not at all clear that private litigants have a cause of action under the FOIA to seek such an investigation, and, in any event, none of the statutory predicates for a Special Counsel investigation are present in this case. *See* 5 U.S.C. § 552(a)(4)(F)(i) (describing the circumstances necessary to trigger a Special Counsel investigation under the FOIA).

### C.    Attorney's Fees Are Not Available Because Kovalevich Is Proceeding *Pro Se*, And Kovalevich Has Not Presented His Argument For Litigation Costs Adequately

Lastly, in addition to making the claims previously discussed, Kovalevich's motion for summary judgment also requests an award of attorney's fees and costs. (*See* Pl.'s Mot. at 4; Pl.'s Combined Reply at 6.) To recover such an award, Kovalevich

18

must demonstrate that he substantially prevailed in the litigation, and that he is entitled to attorney's fees and costs. *See Kretchmar v. FBI*, 882 F. Supp. 2d 52, 58 (D.D.C. 2012).

The Court must deny Kovalevich's request for attorney's fees and costs at this point in the litigation. First of all, as a "*pro se* non-attorney[,]" Kovalevich is ineligible to receive attorney's fees under the FOIA. *Benavides v. Bureau of Prisons*, 993 F.2d 257, 260 (D.C. Cir. 1993). It is true that *pro se* litigants may recover litigation *costs* in appropriate circumstances, *see, e.g.*, *Kretchmar*, 882 F. Supp. 2d at 58, but Kovalevich has not briefed his eligibility or entitlement to litigation costs adequately, *see id*. at 58–59 (explaining the factors that must be met in order to award litigation costs under the FOIA). Additionally, requests for litigation costs must typically "be styled as a motion" that sets forth detailed arguments for why the plaintiff believes such costs are warranted. *Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 164 (D.D.C. 2017).

Accordingly, the Court will deny Kovalevich's request for attorney's fees and costs (which is raised in the context of his summary judgment brief), but it does so without prejudice, and the Court will permit Kovalevich to renew his request for costs in a post-judgment motion, should he choose to do so.

## III. CONCLUSION

For the foregoing reasons, and as set forth in the Order that accompanies this Memorandum Opinion, the Court concludes that the Bureau has discharged its duties under the FOIA, and that the Bureau's motion for summary judgment must be **GRANTED** as a result. The Court has also determined that Kovalevich has failed to

demonstrate his entitlement to judgment as a matter of law in any respect, and that, therefore, his motion for summary judgment must be **DENIED**.  Consequently, the Clerk will be directed to close this case, but if Kovalevich wishes to reassert his request for litigation costs, he may file a post-judgment motion that directly addresses the D.C. Circuit's standards for awarding costs under the FOIA.

DATE:  June 14, 2021

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge